UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLOBAL AEROSPACE, INC.,

        NO. CIV. S-06-594 LKK/KJM

    Plaintiff,

  v.                                O R D E R

ARTHUR J. GALLAGHER & CO.
INSURANCE BROKERS OF
CALIFORNIA, INC.,

    Defendant.
_____/

    This case concerns an insurance coverage dispute. Pending before the court are defendant's motion to file an amended counterclaim and motion for judgment on the pleadings. Defendant alleges that the written insurance policy does not reflect the parties' intent and, accordingly, seeks reformation. Defendant also argues that the written policy was not delivered to the insured prior to the event giving rise to the claim and, on this basis, seeks judgment on the pleadings. As defendant has demonstrated good cause, the motion to file an amended counterclaim

1

is granted.  The motion for judgment on the pleadings is denied, however, because defendant has failed to demonstrate that there are no set of facts under which relief could be granted.

# I. Facts[1]

This case arises out of a crash of an insured aircraft while attempting to land at Reno, Nevada in snow and freezing fog on March 13, 2002. Plaintiff and counter-defendant Global Aerospace, Inc. ("Global") was the insurer for Regent Air ("Regent"), the company that chartered the plane.  As explained further below, while Global has paid for the claims resulting from the crash, it has done so conditionally and denies that it is the responsible party.  It now seeks to recover the money paid on the grounds that the 2002-2003 policy did not provide coverage for the loss.  Regent assigned its rights to seek reformation of the policy to the defendant and counter-claimant in the present suit, Arthur J. Gallagher & Co. Insurance Brokers of California, Inc. ("Gallagher Aviation").

**A. Regent's First Policy (2001-2002)**

Regent is an aircraft charter company located in Truckee, California. Compl. ¶ 3.  Over a nine-year period, Regent regularly submitted requests for insurance quotations to AAU (now, Global). Id.  These requests were denied through 2000. In January 2001, Geoff Logan, a broker employed by Gallagher Aviation, submitted an informal request for quotation to Dan Haldeman, an underwriter of

---

[1] The facts are drawn from plaintiff's pleading unless otherwise specified.

2

AAU/Global. Id. ¶ 5. Based on his observations of Regent's operation, Haldeman agreed to extend an offer of insurance. Id. ¶ 6. On February 13, 2001, Haldeman provided Gallagher Aviation with a written quotation for the Regent account, which contained a pilots declaration limiting covered Pilots in Command (PICs) to those who met ongoing training requirements. Id.

Logan executed and transmitted to Regent a Confirmation of Insurance, dated March 2, 2001, for coverage effective March 3, 2001 to March 3, 2002. Id. ¶ 10. The confirmation stated that PICs covered by the policy were those approved by Gerald Canavan, Regent's owner and one of its pilots. Id. According to Global, this was incorrect. Instead, Global contends that the coverage for PICs, in the written policy, was limited to (1) Gerald Canavan, and (2) other pilots who were properly certified, had completed certain training, and had a specified amount of logged flight time. Id. ¶ 11. Jesse Gallagher, who was the captain of the aircraft involved in the accident, did not satisfy these latter requirements. Global alleges that based on the misrepresentations contained in the Confirmation of Insurance, Regent permitted Jesse Gallagher to operate its aircraft.

**B. Regent's Second Policy (2002-2003)**

Although AAU/Global issued Regent's policy effective March 3, 2001 (based on Regent's informal application through Logan), AAU/Global did not receive Regent's formal application until December 6, 2001. Id. ¶ 13. This application was in the form of a "renewal" for 2002-2003. On February 25, 2002, Haldeman faxed

3

1  Logan a quotation for the renewal, in which he stated that "all
2  Coverages, Terms and Conditions shall remain as per the expiring
3  policy." Id. ¶ 14.  The policy issued by AAU/Global for March 3,
4  2002 to March 3, 2003 contained a pilots declaration identical to
5  the one in the written 2001-2002 policy. Id. ¶ 16.
6       On March 13, 2002, one of Regent's aircraft crashed into an
7  unoccupied commercial building in Reno, Nevada on its approach to
8  the Reno/Tahoe International Airport. Id. ¶ 17.  The crash injured
9  the pilot and five passengers on board and also damaged the
10 aircraft and building. Id.  Jesse Gallagher was operating the
11 aircraft as PIC at the time. Id.  Pursuant to a Dispute Resolution
12 Agreement, which provided that ultimate responsibility for the loss
13 would be resolved either informally or through litigation, Global
14 undertook to pay the claims. Id. ¶ 19.  To date, Global has paid
15 over $3.2 million to settle the various claims arising out of the
16 crash. Id. ¶ 34.

17 **C. Pleadings**

18      On March 21, 2006, Global filed its complaint against
19 Gallagher Aviation.  Subsequently, on May 1, 2006, Gallagher
20 Aviation filed its answer and counterclaim.  The original
21 counterclaim stated, inter alia, a cause of action for reformation,
22 alleging that (1) Regent's renewal application disclosed Jesse
23 Gallagher as a captain who operated Regent's aircraft; (2)
24 AAU/Global's Haldeman confirmed to Gallagher Aviation's Logan that
25 the new policy for 2002-2003 would contain coverage for pilots
26 approved by Canavan; (3) Global intended to provide Regent with

4

coverage for PICs as approved by Canavan; and (4) the renewal policy was not issued until after the accident and, when it was issued, mistakenly did not include the agreed-upon coverage.

On October 31, 2006, Gallagher Aviation filed the present motion for leave to file an amended counterclaim and motion for judgment on the pleadings.[2] The proposed amended counterclaim clarifies and expands upon the factual allegations supporting the cause of action for reformation. It alleges that on December 6, 2001, Regent submitted an application for insurance to Global that expressly disclosed Jesse Gallagher as a captain. In light of the application, Gallagher Aviation contends that Global had a duty to either furnish the insurance requested or to decline to do so within a reasonable amount of time.

As Global allegedly violated this duty, Gallagher Aviation now seeks to reform the contract. The counterclaim states that on February 25, 2002, AAU/Global's Haldeman first faxed Gallagher Aviation's Logan a quotation for renewal, which indicated that "all Coverages, Terms and Conditions shall remain as per the expiring

---

[2] This was after two prior unsuccessful attempts at amending its pleadings. First, on June 6, 2006, Global filed a motion to dismiss the counterclaim for failure to state a claim upon which relief could be granted. On June 25, 2006, Gallagher Aviation filed a statement of non-opposition conditioned upon the court granting its concurrent request to amend its answer and counterclaim (which was not briefed). As a scheduling order had been issued on June 9, 2006, the court directed Gallagher Aviation to file a motion for leave to amend its pleadings and deferred ruling on the motion to dismiss. Second, on July 25, 2006, Gallagher Aviation filed a motion for leave to amend its answer and counterclaim under Fed. R. Civ. P. 15. The court denied the motion without prejudice, noting that the motion to amend was governed by Fed. R. Civ. P. 16(b).

policy," but that later that same day, Haldeman told Logan that the new policy (for 2002-2003) would also provide coverage for pilots who were approved by Canavan.  Furthermore, Gallagher Aviation alleges that when Logan later requested that the insurance be bound pursuant to the "quotation," the quotation included both the fax and the oral representation.  Accordingly, Gallagher Aviation alleges that the absence of coverage in the written 2002-2003 policy for any pilot approved by Canavan was the result of a mistake by Global.

## II. Standards

**A. Motion for Leave to Amend**

A motion for leave to amend a complaint filed after a pre-trial scheduling order has issued is governed by the "good cause" standard of Fed. R. Civ P. 16(b). Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Id., 975 F.2d at 609.  If the party seeking amendment was not diligent, the inquiry should end. Id.; Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1087 (9th Cir.).

In ascertaining whether justice requires granting leave to amend, the court may consider factors such as "the presence of absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue

6

1 prejudice to the opposing party and futility of the proposed
2 amendment." Moore v. Kayport Package Express, Inc., 885 F.2d 531,
3 538 (9th Cir. 1989).  A motion for leave to amend a pleading may
4 also be denied if the amendment would be futile.  See Albrecht v.
5 Lund, 845 F.2d 193 (9th Cir. 1988).

**B. Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as to not delay the trial." Fed. R. Civ. P. 12(c).  All allegations of fact by the party opposing a motion for judgment on the pleadings are accepted as true. Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984).  A "dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969)); see also McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).

When a Rule 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Rule 12(b)(6). McGlinchy, 845 F.2d at 810; see also Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1989); Balistreri v. Pacific Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Thus, the motion will be granted only if the movant establishes that "no relief could be granted under any set of facts that could be proven consistent with the allegations." Hishon v.

7

King & Spalding, 467 U.S. 69, 73 (1984); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Newman v. Universal Pictures, 813 F.2d 1519, 1521-22 (9th Cir. 1987). The court must accept all material allegations of the complaint as true and all doubts must be resolved in the light most favorable to the plaintiff. N.L. Indus. Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

### III. Analysis

Defendant and counter-claimant Gallagher Aviation has filed a motion for leave to file an amended counterclaim and a motion for judgment on the pleadings. With respect to the first motion, Gallagher Aviation argues that its amended counterclaim should be permitted because it merely corrects the defects pointed out by Global's June 6, 2006 motion to dismiss. Global responds that the proposed amended counterclaim would be futile because it could not survive a motion to dismiss. With respect to the second motion, Gallagher Aviation maintains that Global has not alleged, and cannot in good faith allege, that its written 2002-2003 policy was in effect at the time of the crash, because it was not issued or delivered until after the crash. Furthermore, Gallagher Aviation argues that there is no basis for a duty of care running from Gallagher Aviation (as Regent's broker) to Global. For the reasons set forth below, the motion for leave to file an amended counterclaim is granted and the motion for judgment on the pleadings is denied.

**A. Motion for Leave to Amend**

First, Gallagher Aviation moves for leave to amend its

8

counterclaim.  As a scheduling order has been issued in this case, any amendment to the pleadings is permitted only with leave of court upon a showing of good cause.  See Johnson, 975 F.2d at 609; Fed. R. Civ. P. 16(b).  Global contends that Gallagher Aviation has failed to demonstrate good cause and that, in any event, the proposed amended counterclaim would be futile because it fails to cure other critical defects in the counterclaim.

**1. Good Cause**

Gallagher Aviation has demonstrated good cause for leave to amend.  The good cause standard primarily considers the diligence of the party seeking the amendment.  Johnson, 975 F.2d at 609.  Here, Gallagher Aviation's motion to file an amended counterclaim does not arise from a failure to exercise due diligence.  Rather, it is clear that the amended counterclaim is in response to Global's June 6, 2006 motion to dismiss, which argued that the original counterclaim failed to sufficiently allege the intent of the parties and the details of the purported mistakes leading to a contract that the parties did not intend.  In short, Gallagher Aviation is attempting to perfect its counterclaim, rather than to introduce new legal theories.

While it is true that Gallagher Aviation's previous attempts to amend its pleadings were submitted in an inappropriate fashion, Global would not suffer undue prejudice if the instant motion were granted.  See Moore, 885 F.2d at 538

(noting that both undue prejudice and the repeated failure to cure deficiencies by previous amendment are relevant factors in determining whether leave to amend should be granted). Specifically, Global has been aware of Gallagher Aviation's desire to seek reformation, both based upon Gallagher Aviation's previous pleadings, as well as the Dispute Resolution Agreement, which provided Gallagher Aviation with the right to seek reformation on behalf of Regent. Furthermore, discovery is open until January 26, 2007, and, more importantly, the issue of reformation is central to a just resolution of this case. In light of these circumstances, the court finds that there is good cause for leave to amend.

**2. Futility of Proposed Amendment**

Global also contends that, even if Gallagher Aviation is able to demonstrate good cause, leave to amend need not be granted if the amended pleading would be subject to dismissal. See Moore, 885 F.2d at 538. Specifically, Global argues that the amended counterclaim is futile because (1) parol evidence is inadmissible, (2) neither Gallagher Aviation nor Regent Air is a "party aggrieved," and (3) mistake has not been alleged with particularity.[3] The court disagrees.

First, the parol evidence rule is no bar to the amended

---

[3] Global also notes, correctly, that the request for attorney's fees is barred by the Dispute Resolution Agreement. Compl. Ex. A at 2; Cal. Code Civ. P. § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys . . . is left to the agreement, express or implied, of the parties").

10

counterclaim.  Under California law, extrinsic evidence is admissible where it is relevant to prove a meaning to which the language of an instrument is reasonably susceptible.  See Morey v. Vannucci, 64 Cal. App. 4th 904, 912 (1st Dist. 1998).  Here, however, if the written 2002-2003 policy was not even in effect at the time of the crash, any evidence extrinsic to that policy would obviously not be barred.  Whether or nor that policy was in effect turns on issues of fact, see Section IV.B.1, infra, and in the present posture of a motion to amend, it cannot be said that the counterclaim would be "futile."

Second, Global presses that neither Gallagher Aviation nor Regent Air is a "party aggrieved" under California law because they have not suffered damages.  Cal. Civ. Code § 3399 ("When . . . a contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved . . .").  While it is true that Global has paid the claims arising from the crash, it would make little sense to require Gallagher Aviation to first pay several million dollars before it could make its case for why the terms of the written 2002-2003 policy do not apply.  The bottom line is that the resolution of this case requires a determination of which policy terms were in effect at the time of the crash, and if Gallagher Aviation were to succeed with its position, reformation would be appropriate.  In this regard, it is worth bearing in mind that "the remedy of reformation is equitable in nature and not restricted to the exact situations stated in section 3399" of

11

the California Code.  <u>Schs. Excess Liab. Fund v. Westchester Fire Ins. Co.</u>, 117 Cal. App. 4th 1275, 1284 (2004).

Finally, Global maintains that the alleged mistake in the written policy has not been pleaded with the particularity dictated by California law, which requires a party to specify "how the mistake was made, whose mistake it was and what brought it about."  <u>Lane v. Davis</u>, 172 Cal. App. 2d 302, 309 (2d Dist. 1959); Fed. R. Civ. P. 9(b).  Here, the Complaint states that "The terms of the written 2002-2003 policy, which . . . did not include coverage to Regent Air for Jesse L. Gallagher . . . , was the result of a mistake by Global."  Compl. ¶ 16.  Furthermore, in its papers, Gallagher Aviation states that it has "alleged mistake with as much specificity as possible under the facts of this case."  Def.'s Mot. at 8.  The court agrees.  It also bears keeping in mind that "mistake is an ingredient of formation but not its essence.  The essential purpose of reformation is to reflect the intent of the parties."  <u>Jones v. First Am. Title Ins. Co.</u>, 107 Cal. App. 4th 381, 389 (2d 2003).

In sum, the court finds that Gallagher Aviation has demonstrated good cause for leave to amend, and that its proposed amended counterclaim would not be futile.  Accordingly, the motion for leave to file the amended counterclaim is hereby granted.

**B. Judgment on the Pleadings**

Second, Gallagher Aviation moves for judgment on the pleadings.  With respect to Counts 1-5 of the complaint,

12

Gallagher Aviation argues that the written 2002-2003 policy could not be in effect until it had been received and accepted without objection, and that this did not take place prior to the crash. With respect to Counts 1-3, Gallagher Aviation maintains that it did not owe Global a legal duty of care. The court addresses each argument in turn.

**1. Failure to Allege an Applicable Contract**

As an initial matter, Gallagher Aviation asserts that "a careful reading of the Complaint reveals that Plaintiff never actually alleges that its written 2002-2003 policy was in effect at the time of the crash." Def.'s Mot. at 10. The court disagrees. The Complaint states, for instance, that "Jesse L. Gallagher was not an approved pilot according to the terms of the 2002-2003 Policy. Therefore, there was no insurance coverage for the incident under that policy." Compl. ¶ 18. A reasonable inference, which the court is obligated to draw on a motion for judgment on the pleadings, is that this statement alleges that such a policy was in effect at the time of the crash; otherwise, the allegation would serve no role in the Complaint whatsoever. Furthermore, the complaint incorporates by reference the parties' Dispute Resolution Agreement, which also states that the policy covered the period from March 3, 2002 to March 3, 2003. Compl. Ex. A at 1. Again, drawing all reasonable inferences, Global has sufficiently alleged that the policy was in effect during that period.

The gravamen of Gallagher Aviation's motion, however, is

13

that any allegation that the policy was in effect at the time of the crash is untenable as a matter of law. Specifically, it maintains that an insurance policy does not go into effect until receipt and acceptance, and that Global cannot allege that this occurred prior to the crash in good faith.[4] The only case Gallagher Aviation cites in support of this proposition, Chase v. Blue Cross of Cal., 42 Cal. App. 4th 1142, 1155 (1996), states that "[i]t is a general rule that the receipt of a policy and its acceptance by the insured without objection binds the insured as well as the insurer . . ." (internal quotation marks omitted). However, Chase merely states that receipt and acceptance are sufficient to make the policy binding; it does not stand for the stronger proposition that receipt and acceptance are necessary to make a policy binding.

Rather, it is clear that a policy may become binding even before an insurer delivers the policy. In Golden Eagle, the court stated that "[i]t is not necessary . . . for an insurance policy to be physically delivered to the insured in order for the policy to be effective." Golden Eagle v. Foremost Ins. Co., 20 Cal. App. 4th 1372 (2d Dist. 1993) (internal quotation marks omitted). Similarly, in Ahern, the court observed that whether an insurance policy is binding "does not depend on its manual delivery to, or possession by, insured, but rather on the

---

[4] Gallagher notes that, in its answers to written interrogatories, plaintiff conceded that the written policy was not delivered to Gallagher Aviation's Logan until April 23, 2002, more than one month after the crash.

14

intention of the parties as manifested by their acts or words." Ahern v. Dillenback, 1 Cal. App. 4th 36, 46 (4th Dist. 1991) (internal quotation marks omitted).

To be sure, the facts of the present case are not identical to those in Golden Eagle or Ahern. In Golden Eagle, the court found that where the insurer intended to send a copy of the policy to the insured, but was unsuccessful in doing so, it could not then rely on this mishap to argue that the policy was not in effect. 20 Cal. App. 4th at 1388. The court noted that "[w]here the insurer issues a policy and collects a premium, whether from its agent or directly from the insured, fundamental fairness requires the insurer be bound." Id. Here, Gallagher Aviation points out that the insurer is not attempting to evade the policy, but, rather, to argue for its applicability. Nevertheless, if an insurance company evinces sufficient intent for a policy to be binding, it is binding for both the insurer and the insured, not only the former. A contrary rule would lead to the paradoxical conclusion that, wherever physical delivery was deficient, the policy could only be enforced by the insured.[5]

Gallagher Aviation also attempts to distinguish Ahern because, there, the court addressed the issue of when a policy

---

[5] In addition, the equitable principle cited by Golden Eagle, that "[h]e who takes the benefit must bear the burden," applies equally with respect to the insured. 20 Cal. App. 4th 1372 (quoting Cal. Civ. Code § 3521). For instance, an insured could not refuse to pay its premium after receiving the benefit of insurance.

15

has binding effect after it has been issued, whereas here, there is no allegation that plaintiff issued the written 2002-2003 policy prior to the crash.  1 Cal. App. 4th at 46.  While it is true that Global has not clearly alleged when, precisely, the written 2002-2003 policy was issued, it has alleged that such a policy was in effect at the time of the crash.[6]  This is sufficient to survive a motion for judgment on the pleadings, which "may only be granted when the pleadings show that it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd., 132 F.3d 526, 529 (9th Cir. 1997).

In short, Gallagher Aviation has not met its burden of proving that the written 2002-2003 policy could not be in effect, as a matter of law, when the crash occurred.  At the very least, there appear to be circumstances in which an insurance policy is effective even without delivery, e.g., where the insurer intends for the policy to be effective and there is some overt act evincing that intent.  Whether this case fits into those circumstances ultimately turns on issues of fact, but, in the present posture, the court must accept plaintiff's allegations as true.  As Global has sufficiently alleged that

---

[6] The Complaint could also be reasonably construed as alleging that the written 2002-2003 policy was issued on March 3, 2002. Compl. ¶ 16 ("The policy issued by AAU for the policy period March 3, 2002 . . ."). Cf. Compl. ¶ 13 ("[T]he 2001-2002 Policy had issued effective March 3, 2001 . . .").

16

the written 2002-2003 policy was in effect, and there appear to be at least some circumstances in which a policy may be effective without delivery, the motion must be denied.[7]

### 2. Gallagher Aviation's Duty to Global

Gallagher Aviation separately contends that judgment on the pleadings is proper with respect to Global's first, second, and third causes of action (for broker negligence, equitable indemnity, and equitable subrogation) because Gallagher Aviation, as a broker, owed no duty to Global.  Even though a broker is not an agent for the insured, it does not follow that the broker owes no duty to anyone else.  Whether a broker owes a duty to a third party is a matter of policy and involves the balancing of various factors.  See Century Surety Co. v. Crosby Ins., Inc., 124 Cal. App. 4th 116, 125 (2004) (relevant factors include "the extent to which the transaction was intended to affect plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm").

Here, taking plaintiff's facts as true, the court finds that Gallagher Aviation owed a limited duty to Global in the

---

[7] To be clear, the court's ruling is not that the written 2002-2003 policy was, in fact, the contract in effect when the crash took place, as opposed to an insurance binder, for example. Rather, the court merely holds that Global has sufficiently pled this allegation.

17

form of communicating accurate information to its insured.[8] First, the transaction between Gallagher Aviation and Regent Air was intended to affect Global by binding it to an insurance policy.  Second, the harm to Global was foreseeable, because a misrepresentation regarding coverage subjects an insurer to either financial liability (in the form of payment for claims that it did not intend to insure) or potential bad faith liability (if it were to deny the claims), at least in the short-term, even if the insurer's coverage position were ultimately vindicated.  Third, it is certain that Global suffered injury, as it has paid over three million dollars in claims.  Fourth, there is a direct connection between defendant's conduct (an alleged misrepresentation regarding coverage) and the injury sustained (payment of claims).  Finally, imposing a duty here also reduces the likelihood of future misrepresentations on the part of brokers to their clients.

  Accordingly, the court denies the motion for judgment on the pleadings and finds that Gallagher Aviation owed a duty to Global.[9]

---

[8] This duty is secondary to the broker's primary duty to his principal, the insured, but an obligation to convey accurate information regarding the terms of a policy is fully consistent with both duties.

[9] Even if the court were to find that Gallagher Aviation owed no duty to Global, this would, at most, warrant judgment on the pleadings with respect to the first cause of action (negligence) but not the second and third causes of action (equitable indemnity and equitable subrogation).  The latter causes of action require

**V. Conclusion**

Based on the foregoing, the court orders as follows:

1. The motion for leave to file an amended counterclaim is hereby GRANTED.

2. The motion for judgment on the pleadings is hereby DENIED.

IT IS SO ORDERED.

DATED: December 4, 2006.

*/s/ Lawrence K. Karlton*
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

no particular duty other than the general duty to indemnify and subrogate. See Fireman's Fund Ins. Co. v. Haslam, 29 Cal. App. 4th 1347, 1353-54 (1st Dist. 1994) ("The duty to indemnify may arise and indemnity may be allowed when in equity and good conscience the burden of a judgment should be lifted from a person seeking indemnity to one from whom indemnity is sought."); Maryland Cas. Co. v. Nationwide Mut. Ins. Co., 81 Cal. App. 4th 1082, 1088-89 (4th Dist. 2000) ("Equitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss.").

19